JOHN L. BURRIS, Esq., (SBN 69888)
DeWITT M. LACY, Esq., (SBN 258789)
**THE LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com
dewitt.lacy@johnburrislaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF EVANGELINA MACIAS, an individual; ANNA LAURA MACIAS, individually and as Co-Successor in Interest of Decedent Evangelina Macias; MARIA DE JESUS MACIAS, individually and as Co-Successor in Interest of Decedent Evangelina Macias; and VICTOR MACIAS, individually and as Co-Successor in Interest of Decedent Evangelina Macias,<br><br>        Plaintiffs,<br><br>   v.<br><br>WASTE MANAGEMENT HOLDINGS, INC., a corporation; WASTE MANAGEMENT CORPORATE SERVICES, a corporation; and DOES 1-50, inclusive,<br><br>        Defendants. | Case No.:<br><br><u>COMPLAINT FOR DAMAGES</u><br><br><u>JURY TRIAL DEMANDED</u> |

**INTRODUCTION**

1. These claims arise out of the wrongful death of Evangelina Macias.

1

1  Defendants' reckless and patent violations of Title 29 of the United States Code
2  § 654 and Title 8 of the California Code of Regulations caused decedent to be
3  run over by a front-end loader, owned and operated by defendants, on June 18,
4  2012. Defendants had knowledge of the reckless behavior and high risk of death
5  created by its employees, agents, and servants. Defendants' reckless indifference
6  of the high risk of death caused Decedent's death. Furthermore, Defendants'
7  willful and deliberate violations of numerous federal, state, and internal safety
8  policies caused Decedent's death.

## JURISDICTION

2. This action arises under Title 29 of the United States Code, Section 654. Title 28 of the United States Code, §§ 1331 and 1343 confers jurisdiction upon this Court.  The unlawful acts and practices alleged herein occurred in the City of San Leandro, Alameda County, California, which is within this judicial district.

## PARTIES

3. THE ESTATE of EVANGELINA MACIAS is represented by and through, MARIA DE JESUS MACIAS, the decedent's personal representative of the ESTATE of EVANGELINA MACIAS. Decedent, Evangelina Macias, was killed by Defendants.

4. Plaintiff, MARIA DE JESUS MACIAS, the daughter of Decedent EVANGELINA MACIAS, is herein now and at all times mentioned herein a United States Citizen.  Plaintiff brings these claims individually and as co-successor in interest for Decedent EVANGELINA MACIAS.

5. Plaintiff, ANA LAURA MACIAS, daughter of Decedent EVANGELINA MACIAS, is herein now and at all times mentioned herein a United States Citizen. Plaintiff brings these claims individually and as co-successor in interest for Decedent EVANGELINA MACIAS.

6. Plaintiff, VICTOR MACIAS, husband of Decedent EVANGELINA MACIAS, is herein now and at all times mentioned herein a

2

United States Citizen. Plaintiff is a surviving heir of decedent. Plaintiff brings these claims individually and as co-successor in interest for Decedent EVANGELINA MACIAS.

7. Defendant, WASTE MANAGEMENT HOLDINGS, INC. (Hereinafter "WMH") is, and at all times herein mentioned, a corporation duly organized and existing under the laws of the State of Texas. WASTE MANAGEMENT HOLDINGS, INC., is the parent corporation of and controls WM CORPORATE SERVICES and Waste Management Alameda County.

8. Defendant, WM CORPORATE SERVICES. (Hereinafter "WMCS") is, and at all times herein mentioned, a corporation duly organized and existing under the laws of the State of Delaware.

9. Plaintiffs are ignorant of the true names and/or capacities of Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said Defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth.  Each Defendant proximately caused injuries and damages because of their negligence, breach of duty, and negligent supervision, management or control. Each Defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission.  Plaintiffs will ask leave to amend this complaint subject to further discovery.

10. In doing the acts alleged herein, Defendants acted within the course and scope of their employment.

11. Due to the acts and/or omissions alleged herein, Defendants acted as the agent, servant, and employee and/or in concert with each of said other defendants herein.

12. For State causes of action related to Federal claims, Plaintiffs are required to comply with an administrative claim requirement under California

1  law.  Plaintiffs have complied with all applicable requirements.

**FACTS**

13.  On June 18, 2012, Evangelina Macias (Ms. Macias), a 13-year traffic director for Waste Management of Alameda County (WMAC), was run over by a front-end loader tractor.  Jose Castellano (Castellano), an employee of WMAC, drove the front-end loader tractor over Ms. Macias' lower body.  WMAC is wholly owned by its parent corporation, WMH.

14.  On May 7, 2012, WMAC was cited and fined by the California Occupational Safety and Health Administration (Cal/OSHA) for an accident that occurred in its Livermore site. Waste Management failed to place safety barriers to protect spotters/traffic directors, violating Cal/OSHA safety regulations.  Additionally, Waste Management failed to train its employees of known hazards as required by Cal/OSHA regulations.

15.  WMH has knowledge of numerous federal, state, and internal safety policy violations occurring in all Waste Management corporations throughout the nation, including WMAC.  Specifically, the failure of WMH facilities to establish protected areas for traffic directors and others on the ground floor has resulted in numerous incidents of serious bodily harm and/or death over the course of several years, including the death of Ms. Macias.  Accordingly, WMCS, a wholly owned corporation of WMH, and the entity responsible for developing internal safety policies and procedures for all Waste Management corporations throughout the nation, developed a safety policy requiring WMH facilities to establish protected zones for traffic directors and other workers from dangerous vehicles and equipment.  Notwithstanding such injuries and deaths, WMAC continued to operate its facility in a manner that is dangerous to both its employees and to the members of the public.

16.  WMCS is also the entity responsible for monitoring and controlling the security cameras on all Waste Management corporation properties. These cameras monitor and record daily movement on WMAC. Thus, WMCS was aware or should have been aware of the numerous internal safety violations made by WMAC.  Ms. Macias' death was recorded on WMCS surveillance cameras.

4

17. In addition, Castellano had a reputation of being a reckless driver. WMAC had knowledge of Castellano's driving. During several safety meetings, many employees, including Ms. Macias, made complaints regarding Castellano's driving. Three months prior to her death, Ms. Macias demanded Castellano be removed as a driver. She expressed concern about the safety of her peers. Castellano constantly drove too closely to other employees. Despite such knowledge, WMAC continued to allow Castellano to drive. Moreover, WMAC was aware of dangerous driving by other employees and failed to discipline or correct the behavior. Additionally, WMCS and WMH knew or should have known of Castellano's reckless driving as his driving was recorded on WMCS surveillance cameras.

18. Moreover, WMAC employees constantly requested two permanent traffic controllers during each shift because they were concerned about their safety. For more than two years WMAC made promises to provide more than one traffic controller. These promises were not fulfilled until after Ms. Macias' death.

19. On June 18, 2012, Ms. Macias directed incoming truck loaders within the WMAC dumpsite in San Leandro, California. Ms. Macias wore a company sweatshirt with bright yellow reflectors. However, there were no protective safe zones from which Ms. Macias could safely perform her job. WMAC was aware At around 3:00 p.m., Castellano entered the dumpsite driving a front-end tractor loader. Castellano traveled with his loader buckets at a height greater than required by Cal/OSHA safety regulations. The loader bucket obstructed Castellano's visibility and he approached Ms. Macias too closely. Castellano struck Ms. Macias with the front-end loader tractor. Ms. Macias began to yell. As Castellano ran over Ms. Macias' body, other WMAC employees began to shout at him to stop. However, Castellano could not hear the shouting and his communication radio did not function. Castellano continued to drive over Ms. Macias' body. The front-end loader shifted up and down as Castellano continued to drive over Ms. Macias' body.

5

20. WMAC did not immediately call for first aid response. Instead, management approached Ms. Macias with a small first aid kit. A medical response team arrived more than twenty minutes after Castellano finally discovered Ms. Macias' body underneath the tractor. A helicopter transported Ms. Macias to Highland Hospital in Oakland, California. Ms. Macias died from her injuries. Doctors pronounced her dead at 6:25 p.m. the same day. Ms. Macias is survived by her husband, Victor Macias, and her daughters, Maria de Jesus Macias and Anna Laura Macias.

21. Upon investigation by Cal/OSHA, WMAC was again cited and fined for several safety violations, including: (1) failure to annually train and document the training of every employee, (2) failure to establish, implement and maintain an effective Injury Illness Prevention Program (3) failure to establish, implement, and maintain a system for ensuring the safe operation of front-end loaders, and (4) failure to implement a system of traffic controls. Cal/OSHA determined it was these violations that led to Ms. Macias' death.

22. In addition to violating multiple federal and state safety regulations, Waste Management knowingly failed to abide its own safety policies. Per WMCS policy, traffic controllers, like Ms. Macias, are required to be in a protective zone to prevent serious bodily harm or death. This safety barrier or protective zone is also necessary to safeguard members of the public who constantly visit the dumpsite. Despite this policy, WMH failed to provide a protective zone to any of its traffic controllers, including Ms. Macias. These mandatory protective zones were not put in place until after Ms. Macias' death.

**DAMAGES**

23. As a consequence of Defendants' negligence, Plaintiffs were mentally and emotionally injured and damaged as a proximate result of decedent's wrongful death, including but not limited to: Plaintiffs' loss of familial relations, Decedent's society, comfort, protection, companionship, love, affection, solace, and moral support.

24. Plaintiffs are entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b).

25. Plaintiffs are entitled to recover damages pursuant to their right of

6

survivorship for the pain and suffering decedent endured because of Defendants' conduct.

26. Defendants' intentional and/or negligent conduct proximately deprived plaintiffs of decedent's support.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION

(Wrongful Death - Negligence)

(C.C.P. §§377.60 and 377.61)

(All Plaintiffs against Defendants, WMH, WMCS, and DOES 1-50, inclusive)

27. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 26 of this Complaint.

28. Pursuant to C.C.P. § 377.60 a wrongful death action is brought by either the decedent's spouse, domestic partner, and or other statutorily specified family members on their own behalf, or the decedent's personal representative on their behalf, for the death of a person caused by wrongful act of another. The wrongful death action compensates specified heirs of the decedent for losses suffered because of decedent's death.

29. Pursuant to C.C.P. § 377.34, a plaintiff in a wrongful death action is entitled to recover for his own pecuniary loss, which may include the loss of the decedent's financial support, services, training and advice, and the pecuniary value of the decedent's society and companionship.

30. Plaintiff, Victor Macias, is decedent's spouse. Plaintiffs, Maria de Jesus Macias and Anna Laura Macias, are decedent's daughters. Plaintiffs are entitled to compensation for the losses suffered because of decedent's death. Plaintiffs have lost decedent's financial support and advice. Plaintiffs have lost decedent's society and companionship.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

(Negligence)

(Plaintiff, THE ESTATE OF EVANGELINA MACIAS, against Defendants, WMH, WMCS, and DOES 1-50, inclusive)

7

31. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 31 of this Complaint.

32. WMAC had a duty to provide its employees with a safe cork environment pursuant to California Labor Code §6400.  However, WMH created WMCS, in large part, for the purpose of developing safety training and policies, and then providing those policies to WMH facilities throughout the United States, including WMAC.  WMH and/or WMCS safety representatives inspected the front-end loader that ran over decedent.  WMH and/or WMCS safety representatives inspected WMAC for compliance with WMH and/or WMCS safety policies.  WMH and/or WMCS safety representatives had knowledge of and were aware of the operating procedures and the dangers associated with the operation of front-end loaders at WMAC.  WMH and/or WMCS approval or recommendation was sought by WMAC or was required by WMH and/or WMCS to modify or develop WMAC safety policies and procedures.  WMH and/or WMCS approval or recommendation was sought by WMAC or was required by WMH and/or WMCS to modify or develop procedures for operation of WMAC machinery and equipment by its employees.  WMH and/or WMCS participated in Cal/OSHA investigations and independent investigations of workplace injuries at WMAC.  Accordingly, WMH and/or WMCS assumed a duty to provide a safe work environment at WMAC.

33. Defendants failed to annually train, and document the training of, every employee who operates an agricultural or industrial tractor. Decedent gave defendants notice about occupational safety violations. Defendants failed to pursue disciplinary action for such violations. Defendants failed to place protective safety barriers on Defendants' property. Moreover, Defendants violated their own internal safety policies. These policies were intended to protect and safeguard traffic controllers from being run over by vehicles. Defendants' negligent and reckless conduct caused decedent serious physical harm. Defendants' negligent and reckless conduct caused decedent's death.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### **THIRD CAUSE OF ACTION**
(Loss of Consortium)
(All Plaintiffs against Defendants, WMH, WMCS, and DOES 1-50, inclusive)

1  34. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1
2  through 39 of this Complaint.
3  35. At the time of the accident complained of in this Complaint, the Plaintiff,
4  VICTOR MACIAS, was married to decedent. Plaintiffs, MARIA DE JESUS MACIAS,
   and ANA LAURA MACIAS, are the children of Decedent and co successors in interest to
5  THE ESTATE of EVANGELINA MACIAS.
6  36. WMAC had a duty to provide its employees with a safe cork environment
7  pursuant to California Labor Code §6400.  However, WMH created WMCS, in large part,
8  for the purpose of developing safety training and policies, and then providing those
9  policies to WMH facilities throughout the United States, including WMAC.  WMH and/or
   WMCS safety representatives inspected the front-end loader that ran over decedent.  WMH
10 and/or WMCS safety representatives inspected WMAC for compliance with WMH and/or
11 WMCS safety policies.  WMH and/or WMCS safety representatives had knowledge of and
12 were aware of the operating procedures and the dangers associated with the operation of
13 front-end loaders at WMAC.  WMH and/or WMCS approval or recommendation was
14 sought by WMAC or was required by WMH and/or WMCS to modify or develop WMAC
15 safety policies and procedures.  WMH and/or WMCS approval or recommendation was
   sought by WMAC or was required by WMH and/or WMCS to modify or develop
16 procedures for operation of WMAC machinery and equipment by its employees.  WMH
17 and/or WMCS participated in Cal/OSHA investigations and independent investigations of
18 workplace injuries at WMAC.  Accordingly, WMH and/or WMCS assumed a duty to
19 provide a safe work environment at WMAC.
20 37. Defendants' above-described conduct constituted violations of the
21 Occupational Safety and Health Act. Defendants failed to furnish decedent a place of
   employment free from recognized hazards.  Defendants' conduct caused decedent serious
22 physical harm and death.
23 38. Before suffering these injuries, decedent was able to and did perform all the
24 duties of a wife and did perform all these duties, including assisting in maintaining the
25 home, and providing love, companionship, affection, society, sexual relations, moral
26 support, and solace to Plaintiffs, VICTOR MACIAS, MARIA DE JESUS MACIAS, and
27 ANA LAURA MACIAS.  As a direct and proximate result of the injuries, decedent has
28

9

been unable to perform the duties of a wife in that she can no longer assist with housework, have sexual intercourse, participate in family, recreational, or social activities with Plaintiffs, or contribute to the household income. Due to the nature of the injuries sustained by decedent, decedent is no longer able to provide Plaintiffs with love, companionship, affection, society, moral support, and solace.  Decedent will be unable to perform these duties in the future.  Plaintiffs are therefore deprived, and will be, permanently deprived of decedent's consortium, all to plaintiffs' damage, in a total amount to be established by proof at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION

(Survival Action – Negligence)

(Plaintiff, THE ESTATE OF EVANGELINA MACIAS, against Defendants, WMH, WMCS, and DOES 1-50, inclusive)

39. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 38 of this Complaint.

40. Defendants' actions invoke Plaintiffs' rights to bring a survival action Pursuant to California Civil Code Section §377.30.  A survival action is filed by either the estate's personal representative or the decedent's successor-in-interest.

41. Survival actions are appropriate when the decedent did not immediately die from her injuries or if the deceased lived for a short time after the incident causing her death.  Recoverable damages include but are not limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived.

42. Defendants' negligent conduct caused decedent severe physical harm. Defendants' negligent conduct caused decedent's death. Plaintiffs, as husband and children of decedent, are decedent's successors in interest.

43. Decedent did not die immediately from her injuries. Decedent cried out in pain as Castellano struck her with the front-end loader and continued to scream in agony as the tractor continued to roll over her body.  Decedent continued to scream as the tractor

dragged her body approximately twenty (20) feet.  Decedent was run over by the front-end loader at around 3:00 p.m. Decedent was conscious and suffering through extreme pain while and after Decedent was transported to Highland Hospital emergency department. Decedent was pronounced dead three hours later.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress)

(Plaintiff, THE ESTATE OF EVANGELINA MACIAS, against Defendants, WHM, WMCS, and DOES 1-50, inclusive)

44. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 43 of this Complaint.

45. WMAC had a duty to provide its employees with a safe cork environment pursuant to California Labor Code §6400.  However, WMH created WMCS, in large part, for the purpose of developing safety training and policies, and then providing those policies to WMH facilities throughout the United States, including WMAC.  WMH and/or WMCS safety representatives inspected the front-end loader that ran over decedent.  WMH and/or WMCS safety representatives inspected WMAC for compliance with WMH and/or WMCS safety policies.  WMH and/or WMCS safety representatives had knowledge of and were aware of the operating procedures and the dangers associated with the operation of front-end loaders at WMAC.  WMH and/or WMCS approval or recommendation was sought by WMAC or was required by WMH and/or WMCS to modify or develop WMAC safety policies and procedures.  WMH and/or WMCS approval or recommendation was sought by WMAC or was required by WMH and/or WMCS to modify or develop procedures for operation of WMAC machinery and equipment by its employees.  WMH and/or WMCS participated in Cal/OSHA investigations and independent investigations of workplace injuries at WMAC.  Accordingly, WMH and/or WMCS assumed a duty to provide a safe work environment at WMAC.

46. Defendants' above-described conduct constituted violations of the Occupational Safety and Health Act. Defendants failed to furnish decedent a place of employment free from recognized hazards.  Defendants' conduct caused decedent serious

11

physical harm and death.

47. Defendants' negligent conduct caused decedent to suffer serious emotional distress. Defendants' negligence was a substantial factor in causing decedent serious emotional distress including but not limited to suffering anguish, fright, horror, nervousness, grief, anxiety, worry, and shock. Defendants' negligence caused decedent to be run over by a front-end loader. Defendants' negligently and recklessly severed decedent's legs, causing severe anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

48. Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, plaintiffs pray for relief, as follows:

1. For general damages in a sum to be determined according to proof;

2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3. For punitive damages and exemplary damages in amounts to be determined according to proof as to Defendants;

4. For reasonable attorney's fees;

5. For cost of suit herein incurred;

THE LAW OFFICES OF JOHN L. BURRIS

Dated: April 2, 2014        /s/ *DeWitt M. Lacy*
                            DeWitt M. Lacy, Esq.